<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN D. ROBERTS,<br><br>        Plaintiff,<br><br>    v.<br><br>NEW JERSEY TRANSIT RAIL<br>OPERATIONS, INC.,<br><br>        Defendant. | Case No. 2:24-cv-06669 (BRM) (JRA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant New Jersey Transit Rail Operations, Inc.'s ("NJ Transit") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. (ECF No. 23.) Plaintiff John D. Roberts ("Roberts") filed an Opposition (ECF No. 24), and NJ Transit filed a Reply (ECF No. 26). This Court has jurisdiction pursuant to 42 U.S.C. § 1331 and 45 U.S.C. § 51 *et seq.*, *i.e.*, the Federal Employers' Liability Act ("FELA"). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause having been shown, NJ Transit's Motion for Summary Judgment is **GRANTED**.

**I.   BACKGROUND**

**A.   Factual Background**

Between May 19, 1999, and April 7, 2025, Roberts was employed by NJ Transit as a locomotive engineer. (ECF No. 23-2 ¶ 3; *accord* ECF No. 24-1, Responses to Numbered Paragraphs ("Responses") ¶ 3, Additional Material Facts ("Counter-Facts") ¶ 1; *see also* ECF No.

24-3 at 10.) On July 2, 2021, Roberts was assigned to the last locomotive scheduled to travel from Hoboken, New Jersey, to Suffern, New York ("Locomotive 4027"). (ECF No. 24-1, Counter-Facts ¶ 8.) Locomotive 4027 utilized a PL-42 train engine. (*Id.* ¶ 2.) The inside of the engine's rear door has a "red grab handle." (*Id.* ¶ 23.) The outside of the rear door has a safety chain, which runs across the back of the door. (*Id.* ¶ 20.) On both sides of the door are signs stating, "WATCH PINCH POINTS, KEEP HANDS CLEAR WHEN CLOSING DOOR." (*See* ECF No. 23-2 ¶¶ 6, 10, 13; *see also* ECF No. 24-1, Responses ¶¶ 6, 10, 13; ECF No. 24 at 13 (referring to the "pinch-point warning stickers on the door").) Although the rear door includes a mechanism to prevent the door from closing, gravity could cause the door to close on its own accord. (*See* ECF No. 24 at 4; ECF No. 24-1, Counter-Facts ¶ 32.) As a locomotive engineer, Roberts had been trained to keep his hands free of pinch points. (*See* ECF No. 23-2 ¶ 12; *see also* ECF No. 24 at 13 (referring to "internal Rule 71 requiring employees to avoid pinch points"); ECF No. 24-3 at 58–59 (testifying to prior knowledge of Rule 71).)

Approaching Locomotive 4027, Roberts observed "a blue flag attached to the engineer's side window," which signaled the engine was being inspected or repaired. (ECF No. 24-1, Counter-Facts ¶¶ 9–10; *see also* ECF No. 24 at 1–2.) NJ Transit prohibits an "engine from being operated while under blue flag protection." (ECF No. 24-1, Counter-Facts ¶ 10; *see also* ECF No. 24 at 1–2; ECF No. 24-1, Counter-Facts ¶ 2.) A blue flag protection can only be lifted by "the [NJ Transit] mechanical department employee who placed the blue flag." (ECF No. 24-1, Counter-Facts ¶¶ 4, 11.) Neither an engineer nor a conductor may "lift a blue flag protection." (*Id.* ¶¶ 4, 11.)

Roberts entered the engine to inquire as to the status of the engine and observed the mechanical room door was open. (ECF No. 23-2 ¶ 4; *see also* ECF No. 24-1, Responses ¶ 4,

Counter-Facts ¶¶ 2–3, 12–13.) However, Roberts did not locate a mechanical department employee within the engine. (ECF No. 24-1, Counter-Facts ¶¶ 4, 15.) Roberts then elected to look for the mechanical department employee in the passenger coaches and proceeded from the engine to the coaches utilizing the engine's rear door. (*Id.* ¶¶ 16, 18; *see also* ECF No. 23-2 ¶ 4; ECF No. 24-1, Responses ¶ 4, Counter-Facts ¶ 5.) After exiting the engine, Roberts placed his right hand in the pinch point to brace himself while replacing the safety chain. (*See* ECF No. 23-2 ¶¶ 7–8; *see also* ECF No. 24-1, Responses ¶¶ 7–8 (stating he placed his right hand above his head); *id.*, Counter-Facts ¶¶ 21, 24.) The rear door then swung shut on his right middle finger cutting through his work glove and "causing a laceration and fracture." (ECF No. 24-1, Counter-Facts ¶¶ 25–26; *see also* ECF No. 23-2 ¶¶ 2, 11; ECF No. 24-1, Responses ¶¶ 2, 8, 11.)

NJ Transit Car Inspector Andrew Reinhart subsequently inspected the rear door and observed no defects or sharp edges. (ECF No. 23-2 ¶ 15; *see also* ECF No. 24-1, Responses ¶ 15 (admitting Reinhart conducted a "visual" inspection of the rear door); *id.*, Counter-Facts ¶¶ 29–30 (noting the inspector was dispatched to review the rear door for "sharp edges and door operation," and recorded "Defects Found; None").) The rear door was neither changed nor repaired after the accident. (ECF No. 23-2 ¶ 16; *accord* ECF No. 24-1, Responses ¶ 16.) No subsequent investigation has determined the rear door was defective at the time of the accident. (ECF No. 23-2 ¶¶ 15, 18, 22; ECF No. 24-1, Responses ¶¶ 15, 18, 22.)

A union letter addressed to NJ Transit, dated May 30, 2006, noted concerns relating to the safety of the PL-42 engines in response to injuries to two locomotive engineers, including the location of the grab handle and the sharpness of the door jambs. (*See* ECF No. 24-1, Responses ¶¶ 19–20; *accord* ECF No. 24-14.) Although the letter notes these are only "some" of the concerns relating to the safety of the PL-42 engines, the letter does not identify a concern relating to the

3

pinch points. (ECF No. 24-14.) The letter does not state how the two engineers were injured. (*Id.*) Between May 30, 2006, and July 2, 2021, NJ Transit received no complaints relating to the rear doors of Locomotive 4027. (ECF No. 23-2 ¶¶ 19–20; *accord* ECF No. 24-1, Responses ¶¶ 19–20.)

### B. Procedural History

On June 4, 2024, Roberts filed the Complaint. (ECF No. 1.) The Complaint only alleges a single cause of action under the FELA. (*See id.*) NJ Transit filed its Answer on June 20, 2024. (ECF No. 4.)

Fact discovery concluded on June 23, 2025, and expert discovery concluded on September 23, 2025. (*See* ECF No. 19.) On October 27, 2025, NJ Transit filed the Motion for Summary Judgment pursuant to Rule 56. (ECF No. 23.) Roberts filed the Opposition on November 24, 2025 (ECF No. 24), and NJ Transit filed the Reply on December 3, 2025 (ECF No. 26).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual

dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Additionally, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–151 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the

5

truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson*, 477 U.S. at 248, 255).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III.   DECISION

FELA provides a cause of action against a common carrier railroad whose negligence "in whole or in part" causes an injury to its employees. *See Moncrease v. N.J. Transit Rail Ops., Inc.*, 175 F. Supp. 3d 405, 408 (D.N.J. 2016) (citing, in part, 45 U.S.C. § 51). In the Third Circuit, a plaintiff must prove the following four elements to establish a FELA claim: (1) "the defendant is a common carrier by railroad engaged in interstate commerce"; (2) "the plaintiff was employed by

the defendant and assigned to perform duties which furthered such commerce"; (3) "the plaintiff's injuries were sustained while they were employed by the common carrier"; and (4) "the plaintiff's injuries resulted from the defendant's negligence." *Milan v. New Jersey Transit Rail Operations, Inc.*, Civ. A. No. 18-13735, 2025 WL 842313, at *2–3 (D.N.J. Mar. 18, 2025) (internal quotation marks omitted) (quoting *Felton v. Se. Pa. Transp. Auth.*, 952 F.2d 59, 62 (3d Cir. 1991)).

To establish his injuries resulted from a defendant's negligence, a plaintiff must demonstrate the traditional elements of a common law negligence claim: "duty, breach, foreseeability, and causation." *Tramontano v. New Jersey Transit Rail Operations, Inc.*, Civ. A. No. 14-5706, 2023 WL 3248238, at *19 (D.N.J. May 4, 2023) (quoting *Infermo v. New Jersey Transit Rail Operations, Inc.*, Civ. A. No. 10-2498, 2012 WL 209359, at *7 (D.N.J. Jan. 24, 2012)). "Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law." *See Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165–66, 171 (2007) (noting FELA eliminates a number of traditional negligence defenses such as assumption of risk, contributory negligence, and the fellow servant rule).

Under FELA, a railroad has a duty "to provide its employees with a reasonably safe work environment under the circumstances." *Milan*, 2025 WL 842313, at *3 (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987)). "[A] railroad breaches its duty when it knew, or by the exercise of due care, should have known that its operations were inadequate to protect its employees." *Id.* (alteration in original) (quoting *Bruce v. Norfolk S. Ry. Co.*, Civ. A. No. 19-476, 2022 WL 510552, at *3 (W.D. Pa. Jan. 3, 2022)). In other words, if the railroad could not reasonably foresee a particular condition "would or might result in a mishap and injury, then the [railroad] is not required to do anything to correct [the] condition." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011) (second alteration in original) (quoting *Gallick v. Baltimore & O. R. Co.*,

7

372 U.S. 108, 119 n.7 (1963)). Accordingly, "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence." *Gallick*, 372 U.S. at 117; *accord McBride*, 564 U.S. at 703.

To establish reasonable foreseeability, a plaintiff must show the railroad possessed either actual or constructive notice of the alleged dangerous condition that caused injury to the plaintiff. *See Tramontano*, 2023 WL 3248238, at *19 (citing *McBride*, 564 U.S. at 691; *Wisowaty v. Port Auth. Trans-Hudson Corp.*, Civ. A. No. 11-2722, 2013 WL 103385, at *3 (D.N.J. Jan. 8, 2013)). An employer has actual notice of a dangerous condition if the employer "either created the condition or received reports of it such that [the] [employer] is actually aware of the existence of the particular condition." *Id.* (first alteration in original) (quoting *Wagner v. CSX Transp., Inc.*, Civ. A. No. 20-1314, 2023 WL 34803, at *4 (W.D.N.Y. Jan. 4, 2023)). In contrast, an employer has constructive notice if the condition is visible and apparent and has "exist[ed] for a sufficient length of time prior to the accident to permit [the] [employer] to discover and remedy it." *Id.* at *20 (second alteration in original) (quoting *Wagner*, 2023 WL 34803, at *4). "The mere [e]xistence of an alleged dangerous condition is not constructive notice of it." *Id.* at *21 (quoting *Wisowaty v. Port Auth. Trans-Hudson Corp.*, Civ. A. No. 11-2722, 2012 WL 5555337, at *3 (D.N.J. Nov. 9, 2012)); *see also Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) ("In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the 'particular condition' at issue.").

Unlike the elements of duty, breach, and foreseeability, which follow the traditional common law standard, the element of causation applies a relaxed standard under FELA. *See McBride*, 564 U.S. at 692; *see also Gomez v. H&M Int'l Transportation, Inc.*, Civ. A. No. 17-231, 2021 WL 236596, at *3 (D.N.J. Jan. 25, 2021) ("FELA is neither a strict liability law nor a

workers' compensation statute, but a 'negligence statute with an explicitly-stated relaxed standard of causation.'" (quoting *Monheim v. Union R.R. Co.*, 996 F. Supp. 2d 354, 361 (W.D. Pa. 2014)). Notably, "FELA does not require the employer railroad's negligence to have been the sole cause of the employee's injury." *Tramontano*, 2023 WL 3248238, at *19. Rather, causation is established if the railroad's negligence "played any part, however small, in the injury." *McBride*, 564 U.S. at 694 (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 (1957)); *see also Romero v. CSX Transp., Inc.*, Civ. A. No. 06-1783, 2008 WL 5156677, at *3 (D.N.J. Dec. 9, 2008) (noting although FELA "does not completely dispense with the requirement that a plaintiff establish a causal connection between the railroad's negligence and the injury, it sets a very low proximate cause standard."). Accordingly, a negligent railroad "can only evade liability if [the] [p]laintiff was the *sole* cause of his injury." *Milan*, 2025 WL 842313, at *5.

At the summary judgment stage, the court is justified in withdrawing a FELA claim from the jury's consideration only if "there is a zero probability either of [the railroad's] negligence or that any such negligence contributed to the injury of an employee." *Milan*, 2025 WL 842313, at *5 (quoting *Pehowic v. Erie Lackawanna R. Co.*, 430 F.2d 687, 699–700 (3d Cir. 1970)). Therefore, to defeat a summary judgment motion, a plaintiff need only present to the court a minimal amount of evidence demonstrating there exists a reasonable basis to submit the FELA claim to a jury. *See Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653 (1947); *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 268 (3d Cir. 1991); *see also Milan*, 2025 WL 842313, at *3 ("A plaintiff in a FELA action must produce direct or circumstantial evidence that justifies or supports an inference of the employer's negligence." (quoting *Caling v. N.J. Transit Rail Ops., Inc.*, No. A-142-23, 2024 WL 4524113, at *4 (N.J. Super. Ct. App. Div. Oct. 18, 2024))). A plaintiff cannot

9

survive a summary judgment motion "based on speculation or a record completely devoid of probative facts." *Tramontano*, 2023 WL 3248238, at *19.

Here, NJ Transit moves for summary judgment on the FELA claim pursuant to Rule 56. (ECF No. 23.) Specifically, NJ Transit argues it is entitled to judgment as a matter of law as Roberts cannot prove the fourth element—Roberts's injuries resulted from NJ Transit's negligence. (ECF No. 23-1 at 8–10.)

In response, Roberts argues there is sufficient evidence in the record by which to demonstrate a reasonable basis to submit the FELA claim to a jury. (*See* ECF No. 24 at 9–14.) He claims NJ Transit breached its duty of care by failing to address the defective rear door, which abruptly "swung shut" and "slammed" on Roberts's finger. (*Id.* at 10–13.) Roberts appears to contend the record supports the inference the door was either defectively designed or negligently maintained. (*See id.* at 10 ("Failed latch, heavy door, no handle on outside, small grate to balance on, and no protection on door frame created a hazard that [NJ Transit] failed to address."); *id.* at 12 ("[NJ Transit] failed to provide a reasonably safe place to work by allowing a heavy steel door to swing shut at a platform interface without additional protection, guarding, or restraint to prevent pinch injuries").) Roberts presents no expert testimony in support of either claim. (*See generally* ECF No. 24.) Alternatively, Roberts claims NJ Transit breached its duty by releasing Locomotive 4027 from the yard without removing the blue flag protection, which caused Roberts to exit the engine through the rear door. (*Id.* at 9–10.) The Court addresses each argument in turn.

### A.    Defective Design

First, Roberts alleges the defective design of the rear door was a dangerous condition, which caused or contributed to his injury. (*See id.* at 10 ("[H]eavy door, no handle on outside, small grate to balance on, and no protection on door frame created a hazard that NJTRO failed to

address.").) Roberts, however, fails to present expert testimony in support of his argument the design of the rear door was defective. (*But see id.* at 13 (merely stating "other [NJ Transit] locomotives utilize thicker rubber molding around door/frame").)

If a plaintiff is required to present expert testimony to establish an element of his claim, "the court may grant summary judgment if that testimony is excluded." *Dymnioski v. Crown Equip. Corp.*, Civ. A. No. 11-3696, 2013 WL 2297035, at *7 (D.N.J. May 24, 2013) (quoting *Kolokowski v. Crown Equip. Corp.*, Civ. A. No. 05-4257, 2009 WL 2857957, at *4 (D.N.J. Aug. 27, 2009)); *see also Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000) (affirming dismissal of defect design claim absent expert testimony). Relevant to this matter, courts have routinely held expert testimony is required to establish a defective design claim involving a "complex instrument[]." *See Dymnioski*, 2013 WL 2297035, at *4 (quoting *Kolokowski*, 2009 WL 2857957, at *4); *see also Kuhar v. Petzl Co.*, Civ. A. No. 19-3900, 2022 WL 1101580, at *3 (3d Cir. Apr. 13, 2022) (requiring expert testimony if the design involves "scientific, technical, or other specialized knowledge"); *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 823–24 (D.N.J. 2019) (requiring testimony showing "the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product"). This general rule is left undisturbed under FELA. *See Kukowski v. Soo Line R.R. Co.*, Civ. A. No. 16-1260, 2018 WL 834235, at *11 (D. Minn. Feb. 12, 2018).

A locomotive is a complex instrument, which employs scientific, technical, and specialized knowledge beyond the knowledge and experience of a jury. *See In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Alabama, on Sept. 22, 1993*, 188 F. Supp. 2d 1341, 1349 (S.D. Ala. 1999) (citing *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F. Supp. 1105, 1107–08 (N.D. Ala. 1996)). Even

11

something as seemingly simple as the exterior design of a rear door on a locomotive is complex and requires the consideration of numerous factors other than the safety of the engineers. For this reason, several district courts have held a plaintiff cannot establish a FELA claim based on a design defect absent expert testimony. *See Kukowski*, 2018 WL 834235, at *11 (holding expert testimony is required "where a plaintiff's negligence claim is grounded on the railroad's failure to equip . . . some sort of safety feature"); *see also*, *e.g.*, *Miciotto v. Brown*, Civ. No. A. 02–1485, 2003 WL 22326559, at *5 (E.D. La. Oct. 6, 2003) (holding, absent expert testimony, allegations "restraints and/or padding would have prevented [the plaintiff's] damages . . . . are simply insufficient to avoid summary judgment"); *Thirkill*, 950 F. Supp. at 1107–08 (requiring expert testimony regarding "cab design location of the brake valve"); *Diaz v. Glock, Inc.*, Civ. A. No. 08-5670, 2012 WL 13186916, at *4 n.4 (D.N.J. May 30, 2012) (requiring expert testimony regarding a "lock mechanism on a train door" (citing *Rocco v. N.J. Transit Rail Operations, Inc.*, 749 A.2d 868 (N.J. Super. Ct. App. Div. 2000)). *But see Szaroleta v. Metro-N. Commuter R.R.*, Civ. A. No. 07-7639, 2008 WL 4681983, at *5–6 (S.D.N.Y. Oct. 20, 2008) (holding "consideration of whether a lock, sign or additional railroad personnel would prevent or deter unauthorized persons from entering the [engine] is 'generally understood' and does not require expert testimony").

Here, Roberts has failed to present any expert testimony in support of his FELA claim. (*See generally* ECF No. 24.) Having failed to present same, a reasonable factfinder cannot find the rear door was defectively designed or that a practical alternative design existed which would have prevented Roberts's injury without substantially impairing the exterior design and function of the locomotive. Therefore, Roberts has failed to present the minimal amount of evidence necessary to submit the FELA claim based on the allegedly defective design of the rear door to the jury. *See Hines*, 926 F.2d at 268.

### B.       Negligent Maintenance

Next, Roberts alleges NJ Transit breached its duty of care by failing to address the defective rear door, which abruptly "swung shut" and "slammed" on Roberts' finger. (*See* ECF No. 24 at 10–13.) Although Roberts claims NJ Transit has received "numerous prior complaints and injuries from PL[-]42 suddenly closing on employees' hands" (*id.* at 12; *accord* ECF No. 1 ¶ 15), Roberts only cites to the May 30, 2006 Union Letter, which states two engineers "ha[d] been hurt on the new PL-42 engines" (ECF No. 24-14). The letter does not state how the engineers were injured but noted concerns regarding the angle and proximity of the handles to the door, tripping hazards, and "sharp edges on the door jambs." (*Id.*) Nor does the record establish whether the alleged sharp edges on the door jambs were a universal defect in all PL-42 engines or a limited defect only in some engines. (*See generally id.*)

Regardless, Roberts does not allege his injury was caused by the sharp edge of the door jamb but rather alleges it was caused by the defective rear door, which failed to stay open and closed on his fingers. (*See* ECF No. 24 at 10–13; *accord* ECF No. 1 ¶ 15.) The record does not suggest NJ Transit had actual notice that the rear door of Locomotive 4027 was closing on its own accord prior to the accident on July 2, 2021. (ECF No. 23-2 ¶¶ 19–20; *accord* ECF No. 24-1, Responses ¶¶ 19–20.) Nor does the record suggest NJ Transit had constructive notice, as the subsequent inspection found no defects in the operation of the rear door. (*See* ECF No. 23-2 ¶¶ 15–16, 18, 22; ECF No. 24-1, Responses ¶¶ 15–16, 18, 22; ECF No. 24-1, Counter-Facts ¶¶ 29–30). Therefore, Roberts has failed to present the minimal amount of evidence necessary to submit the FELA claim based on the negligent maintenance of the rear door to the jury. *See Hines*, 926 F.2d at 268; *see also Cordero v. New Jersey Transit Rail Operations, Inc.*, No. A-3646-21, 2023

WL 5742954, at *5 (N.J. Super. Ct. App. Div. Sept. 5, 2023) (holding expert testimony is required to establish claim "sliding door was in any way defective, hazardous, or dangerous").

### C.    Blue Flag Protection

Finally, Roberts alleges NJ Transit breached its duty by releasing Locomotive 4027 from the yard without removing the blue flag protection, which caused Roberts to exit the engine through the rear door. (ECF No. 24 at 9–10.) However, under FELA, a railroad only has a duty to address a dangerous condition, *i.e.*, a condition that "would or might result in a mishap and injury." *McBride*, 564 U.S. at 703 (quoting *Gallick*, 372 U.S. at 119 n.7); *see also Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 896 (8th Cir. 2012) (holding "the proper foreseeability question for the present case is whether a reasonably prudent person who knew of the reported problems would have anticipated an injury to occur as a result of [same]").

As discussed, *see supra* Section III.A, NJ Transit had neither actual nor constructive notice that Locomotive 4027's rear door was closing on its own accord prior to the accident (*see* ECF No. 23-2 ¶¶ 15–16, 18–20, 22; *accord* ECF No. 24-1, Responses ¶¶ 15–16, 18–20, 22; *id.*, Counter-Facts ¶¶ 29–30). Therefore, NJ Transit had no duty to address the door prior to the accident and, as such, could not have reasonably foreseen that releasing Locomotive 4027 from the yard without removing the blue flag protection would result in an injury. *See McBride*, 564 U.S. at 703. Furthermore, the record establishes Roberts was not required to exit the engine through the rear door and could have exited through the same manner in which he entered the engine initially. *See Malakas v. Port Auth. Trans-Hudson Corp.*, Civ. A. No. 21-11845, 2023 WL 8947386, at *4 (D.N.J. Dec. 28, 2023) (holding the plaintiff cannot establish the elements of breach or foreseeability where the railroad neither mandated nor encouraged use of a route when that "route was not required and that alternative routes were available"). Therefore, Roberts has failed to

present the minimal amount of evidence necessary to submit the FELA claim based on the failure to remove the blue flag protection to the jury. *See Hines*, 926 F.2d at 268.

Accordingly, NJ Transit's Motion for Summary Judgment is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, NJ Transit's Motion for Summary Judgment (ECF No. 23) pursuant to Rule 56 is **GRANTED**. An appropriate order follows.

**Date: April 23, 2026**                              */s/ Brian R. Martinotti*
                                                                    **HON. BRIAN R. MARTINOTTI**
                                                                    **UNITED STATES DISTRICT JUDGE**

15